Thank you, your honor. May it please the court. My name is Brian Rochelle and I represent the appellant Julie McKey. The evidence in this record allows a reasonable jury to find that U.S. Bank's adverse actions toward Ms. McKey were based on her age, her reports of discrimination, or both. Now just some of that evidence includes Ms. McKey's documented 40-year history of strong performance, the fact that she never received a negative performance evaluation in her career, the fact that she made fewer mistakes and performed better than many of her younger peers, but at the same time her manager treated her worse, held her to a higher standard, and favored higher and younger employees. And at the time of her termination, she was replaced by a 27-year-old new hire. The fact, your honors, that Ms. McKey did not even cause the error that was the claimed basis of her termination. Her manager's purported reason for terminating Ms. McKey had unraveled. Those are U.S. Bank's human resources own words, not Ms. McKey's. And when asked why they went ahead with termination anyway, her managers could not explain. They played a game of hot potato, blaming each other and claiming they could not recall anything about the decision-making process that had recently reported age discrimination. The district court erred by compartmentalizing, discrediting, and ignoring this evidence of discrimination and retaliation. Now before discussing these errors in more detail, I do want to highlight, your honors, that Ms. McKey's claims arise solely under the Minnesota Human Rights Act. And this is important because the MHRA has a lower standard to prove causation than the ADEA. Under the MHRA, if a jury found that Ms. McKey's age protected conduct motivated, which means played any part in the adverse actions taken against her, then a jury may find in her favor, which is lower than the but-for causation standard in the federal ADEA. Now I want to talk about evidence that does allow a jury to find age discrimination based on this record. The district court ruled that Ms. McKey failed to produce evidence of age bias, but the evidence is in the record. The district court either misconstrued or ignored it. The first is Ms. McKey's 41-year history, throughout which time she was given the same positive performance score. In addition, both of Ms. McKey's managers praised her performance, including up until the time of her termination. And this circuit has held that a long record of solid performance can be evidence of bias in an age discrimination case. In fact, I'd like to call... Didn't her reviews though contain more than one sort of negative statement about getting her ability to get her work done in an eight-hour day, that sort of thing? Weren't those also in the performance review? There was language like that in the reviews, your honor, and that has become the focal point of U.S. Bank's case at this point. First, for all 40 years, Ms. McKey was given not only a solid performer rating for the sum total, that meaning the entire review for each year, but in every single subcategory as well. There's only one time that she wasn't even given a solid performer or better rating in a subcategory, and that was in 2015. And she in fact disputed that. She said, I don't believe this is accurate based on my performance. But even setting that aside, there was constructive criticism as Ms. McKey testified in her deposition and Ms. Messick, her manager, testified in hers. But that was common for every single employee. The performance evaluations of all of Ms. McKey's comparator co-workers were provided in Discovery for the past two years. And if you compare Ms. McKey's performance reviews, including the language that her manager used with those of her peers, there's a marked difference. There are a few comments that are cherry picked out of years of performance reviews about you could improve your time management or you could make fewer mistakes. That's essentially what it boils down to. But if you look at the comparator evidence in this case, your honors, that which really is key in this case shows that no fewer than eight of Ms. McKey's co-workers also made mistakes that were at least as bad as those attributed to Ms. McKey or far worse, including for instance, a younger co-worker who caused a $34,000 error but was not terminated. Or if you just want to talk about the performance evaluations, over a two-year time span, five. Five people had performance evaluations that were less favorable than Ms. McKey. And not one of those five employees was terminated on the basis of performance. Now the district court rejected all of this comparator evidence, all eight in one sentence, concluding that every one of these comparators either was terminated or didn't have the same position as Ms. McKey. But that's just simply wrong. None of the eight comparators were terminated for the reasons that we set forth in the brief. So the particular errors at that point in time or the particular negative review score at that point in time, they might've been terminated or resigned years in the future. But we're saying that if you look at the conduct described to Ms. McKey and you compare it at that same point in time with her younger comparators, they were treated more favorably and she was terminated. And next your honor, every one of these employees had the exact same title. It's global security specialist. That was the title. So the district court's conclusion that these comparators had different titles or were terminated is a factual error and it's reversible. I would like to highlight the Riddout case, your honor, because that really is on all fours with what we have here. There, this circuit held that a plaintiff's 40-year work history showed that the employer viewed him as productive and satisfactory for decades. Now that cast doubt on the employer's claim that the employee had suddenly become a terrible performer. It's very similar to the facts that we have here. And also in Riddout, your honors, the plaintiff's most recent performance evaluation rated him as meets expectations. That's essentially the same review that we have here immediately preceding termination. And this court held that such evidence necessarily creates a fact dispute when a termination of a long-term employee is based on declining performance. That's on all fours here, your honor. The district court ignored this evidence completely and failed to even acknowledge the Riddout case. That's reversible error. And similar, U.S. Bank doesn't even cite, let alone try to distinguish the Riddout case. I also want to highlight Riddout for the proposition that comparators need not be clones. On appeal, U.S. Bank tries to parse the record to argue that some of these eight comparators had different possessions. First, that's an argument first raised on appeal. It was never argued below. And the district court did not find that these different levels of positions were the reason. So it shouldn't be, should be rejected for that reason. But more importantly, U.S. Bank doesn't cite to any record evidence or provide any explanation at all how a global security specialist one or a global security specialist two has any meaningful difference. The testimony in the record is uniform that all of the global security specialists were on the same team, reported to the same manager, and processed error, or excuse me, processed elections. If this evidence is not admissible or competent comparator evidence, then one would truly need to actually have a clone to compare to the plan. I'd also like to highlight, your honors, the with Ms. McKee on a daily basis. He was her backup. He was in a unique position to assess whether or not Ms. McKee was making errors and mistakes, and whether she was a good performer. He testified she did not make excessive mistakes or errors, and that he and nobody on his team saw any reason that Ms. McKee should be terminated. The district court rejected this testimony wholesale, and it was error in doing so. Mr. Casewell is the only third party witness in this and at this stage in the proceeding, his testimony must be credited. Mr. Casewell further testified, provided testimony that calls into question Ms. McKee's manager's motive and credibility. Now, her manager had a preference for hiring younger men right out of U.S. Bank's college recruitment program. When asked about this in her deposition, she testified she had played no process, no part in the process, had no idea who interviewed college recruits, and that they just appeared on her team one day. But Mr. Casewell, who was in fact one of these very college recruits, testified that it was only Ms. Messicoma who interviewed him, and only Ms. Messicoma who played any part in bringing him on and the other college recruits onto the team. Again, Mr. Casewell's testimony has to be credited as true, and at this stage, a jury would be able to question Ms. Messicoma's motivation and not being forthright about preference for younger workers. I also want to talk about evidence in the record about retaliation in honors. The only issue on appeal is causation. Simply put, Ms. McKee must only show evidence that retaliatory motive played a part in either her discharge or U.S. Bank's rejection of her post-determination applications. And the district court dismissed the retaliation claims on two separate bases, that Ms. McKee only presented evidence of timing to prove causation, and that a jury could not find Ms. McKee played any role in Ms. McKee's termination. But both of these conclusions are both wrong, and the court drew facts and inferences in favor of Ms. McKee. First, Ms. McKee presented much more evidence than simply timing on summary judgment, just as she does here on appeal. All of the pretext that it's calling into question U.S. Bank's motivation, the credence regarding the company's termination reason, is relevant both to her age and retaliation claims. But in addition, Ms. McKee presented evidence of the manager's game of hot potato regarding who made the decision and why, and a jury can question the credibility and actual basis for termination. She also cited emails regarding the decision to terminate Ms. McKee's employment that contained references to potential reports of discrimination. And the fact that while they offered Ms. McKee 30 days to look for another job within the company, both her manager and human resources actively undermined her efforts to seek other jobs, including jobs that were at a lower level than she was presently at. The idea that an employee who had a documented record of 41 years of positive performance couldn't secure any other job throughout the entire company is highly suspect, and evidence that the managers told other recruiters and hiring managers to not hire McKee is evidence of potential retaliatory actions. Your honors, I want to highlight that again, a jury may only find that retaliation played a part in this process. And the lower court's conclusion that Ms. Guzzi was not involved in the decision to terminate Ms. McKee is wrong. She was undisputedly involved based on the record in this case. Evidence includes US Bank's own admission and interlocutories, testimony by every single manager that Ms. Guzzi was involved in the Ms. McKee. So it's simply wrong to conclude that Ms. Guzzi was not involved in the decision. I'd like to reserve the balance of my time unless the court has any questions, your honor. Very well, thank you, Mr. Rochelle. I'm going to hear from Ms. Brinkman. Ms. Brinkman, I think you may have your microphone on. There we go. Can you hear me now? Yes. Thank you. May it please the court, Ellen Brinkman on behalf of US Bank. US Bank views this case as a very straightforward application of facts to existing law. This case does not involve any nuanced legal theories, and it doesn't involve a battle of conflicting case law. Rather, if you apply the evidence to the elements of each claim, just like the district court did, Julie McKee did not meet her burden to defeat summary judgment, and we're asking the court today to affirm the district court's decision. This case involves a very simple set of facts. Ms. McKee was terminated for poor performance, and there is one specific thing that makes this case unique, and it's this. Julie McKee admitted that she made errors and she had performance issues before her action plan, during her action plan, and after her action plan. That does make this case different from other cases in this circuit. Ms. McKee was terminated following a 60-day action plan when she was required to improve her performance, sustain that performance, or face termination. When she had some improvement during the time of the action plan, she was allowed to complete that action plan, even though there were errors during that time. But she continued to have errors in her work after the action plan was completed, and at that point she was terminated. She was given some additional time to find a job as a sign of good faith from U.S. Bank, and she was unable to do so. Although Ms. McKee presents many evidence to this court to reverse this decision, none of those evidence are compelling, and none of those are supported by the record evidence. And as I listen to the arguments of my opposing counsel, I really ask the court to look at the case, especially to look carefully at Ms. McKee's performance and her own testimony, because there is so much testimony that talks about all the performance problems that she had. I'd like to first talk about one of the easiest ways for this court to affirm the decision to dismiss the age discrimination claim, and that's on the fourth element of the prime fascia case. The fourth element required Ms. McKee to show that she had some additional evidence that age was a factor in her termination, and she did not do that. And that's why this case can be dismissed without even getting to her pretext arguments. Ms. McKee was not replaced when she was terminated, contrary to what my opposing counsel said in his introduction, that she was replaced by a 27-year-old employee. That is nowhere in the record. The only record evidence that discusses what happened to Ms. McKee's job duties is at page 371 of the appendix. That's an answer to interrogatories, where U.S. banks stated that following Ms. McKee's termination, her job duties were dispersed to three different people. One of those people was a 57-year-old employee who had just recently been hired by Yvonne Messacomer, the same manager that was involved in the decision to terminate Ms. McKee. The undisputed evidence is that there was no job posting for Ms. McKee's position following her termination, there was no requisition, there was no interview process for her position, and there is zero evidence or testimony that someone filled her specific role. There was never a situation where her exact desk and her job duties were taken and given to someone else. And so for this reason alone, based on the case law in Lewis v. St. Cloud State University, and also in the Nash case, which is Nash v. Optumac, both of these cases are cited in our brief significantly. Under those cases, without a permanent replacement, we ask the court affirm the decision on the prima facie case. Additionally, however, the district court gave another grounds to dismiss the age discrimination case, and that's that Ms. McKee did not establish pretext. There are several arguments that are made by the plaintiff regarding pretext. There's four key arguments, and I'd like to go through each one of them. The first argument, and perhaps the main argument that the plaintiff discusses is comparator evidence. Comparators, as this court knows, need to be similarly situated at all relevant respects, and this court has said repeatedly that that standard is rigorous. The district court walked through the comparators and found that none were proper to compare to Ms. McKee. And in looking at the case law, the court is able to look at the plaintiff's job title, job duties, supervisor, whether certain performance issues or offenses are the same in frequency, or severity, or seriousness. And I also submit to this court that the length of tenure of comparators is an important factor that can be considered. I believe in the briefing, plaintiff indicated that there was no case law to support that proposition, and I'd like to give you a couple of cases right now that do support that proposition. One is a case called Harrington v. Booth Hill Counseling Services, Inc. The site is 2012 Westlaw 118-8276. It's Eastern District of Missouri case from 2012, and if you look at page 5, the court is talking about how the plaintiff failed to demonstrate that employees were similarly situated in terms of the years of service and their experience. Another... Is that cited in your brief? I don't believe that's cited in our brief, Your Honor. Why should we look at it? I believe it was cited in our briefs to the district court. I actually don't care. And it is also in response to their reply brief, which is where this argument was raised, that they did not have any case law, that we did not have any case law to support that proposition. So I'm responding to that now. Additionally, there's a case, Nuren v. Aduchi, Mastriani, Meeks & Schill. It's 43F3D, 1507 D.C. Circuit from 1995. At page 1514, the court said that a terminated attorney was not similarly situated to another associate, in part because the comparator was less senior and did not have the years of experience. Let me interrupt again, and then I'll try to be quiet. As the court said in the write-out case, we have to have a substantially similar employee, but not a clone. That's correct. Do you disagree with that? We don't disagree that the standard is that the person doesn't have to be a clone. We understand that and agree that that is the case law, but it doesn't take away from the fact that that comparison is rigorous. I also will, while you raise that, Your Honor, the write-out case, I'll just take a minute to address that. My opposing counsel said that the court didn't even address that case. I would submit to you the reason the court at the district court level didn't address that case is because it's not even close. The write-out case, the plaintiff in that case was terminated without any prior discipline or counseling. The plaintiff also was meeting reasonable expectations at the time of his termination. There was absolutely no lead-up to that plaintiff's termination like Julie McKee, where she was placed on an action plan following months of issues, and she continued to have additional errors. And so, for those reasons, that case is distinguishable. I believe my opposing counsel is referring to PE, and forgive us, we did try to protect the identities of the comparators, and so we had to refer, we decided to use initials, but my opposing counsel referred to a 34-year-old employee who was terminated for $34,000 error and said that that employee was not terminated. PE was terminated. What happened with PE is that, and I should just say PE was also new to the team, so going back to my argument just a moment ago, different level of experience. He did have a different title, which is security specialist one. He did have that significant error. He was immediately placed on an action plan, just as Ms. McKee was. He completed that action plan, however, had further issues and was terminated. And so, he was treated the same as Julie McKee, and so we believe that's evidence that actually supports our position that Ms. Messicomer, the manager, was equally treating these employees equally, even though there were distinguishing factors between their level of experience. I'd also submit to you, your honors, that it is not proper for this court to consider any of the comparators beyond the three that were initially discussed in detail in the opening brief by the appellant, and that the discussion of those other comparators should be waived. But if you do look at the record and go through the other five comparators, each of those comparators did not have issues the same in level of severity. They didn't have ongoing issues like Ms. McKee did. Some of those individuals were terminated. Some of them were in her same protected class. The district court did that analysis and found that that comparator evidence was not sufficient. Let me interrupt one more time. I know it's in your brief, and it was the district court's opinion, but specifically as far as failing to meet the action plan and her continual performance of error, is this a pointed case of an employee whose time has passed in terms of technical proficiency? I mean, you're responding now to an oxygenarian who has trouble getting his computer started, and my judicial assistant sits about six feet away to get me linked up here. Isn't that the poignancy of this case, that at one time she was competent in all respects, but the world has passed her by? I mean, it's a brutal, it may be a brutally frank assessment, and I'm sure your opponent won't agree with it, but there is a poignancy about it. In which case, you get to be 86, and you might agree with me. Your Honor, I understand the point. What I would say to that is U.S. Bank nor Ms. McKee ever believed that she was incapable of working with the technology. U.S. Bank never treated her as such, and she did all of the training. She requested the additional training, and they provided it so that she could use the systems, and she testified that she was able to use the systems. There was testimony that she said it would take her more time to do her not necessarily, though, because of the technology. And so, that issue was not something that U.S. Bank was considering in terms of her getting older and not being able to work. Looks like we've got a little issue with the sound transmission. Ms. Brinkman, you may need to disconnect and link back in. Ms. Rudolph, should we try to reconnect her? I'm going to go ahead. It looks like she's doing it herself. Stopped her clock. There we go. Ms. Brinkman? There we go. I'm sorry. I don't know what happened. Speaking of, ironically, technology issues, and then I get kicked out of Microsoft Teams. There we go. We're back. We're back. To summarize that, that was not something that was considered, and Ms. McKee admitted that she did receive the additional training so that she could do her job. But to follow up on that, it does seem odd, and I know this isn't necessarily the standard, but she was an employee for 41 years. She was. It seems odd that all of a sudden, presumably, she was making mistakes all along, and then all of a sudden, after 41 years, that's a long employment record, that she gets terminated. It is a long record, and what I'll tell you, Your Honor, is evidence of how she performed before 2011 is not in the performance reviews dating back years, so I don't think that you can take Ms. Rochelle's statement that she was a good performer for 40 years at heart. This case is about a person who started to perform works in 2014 and 2015, and U.S. Bank worked with her, and she was unable to improve that performance. I'd also like to just note one point that is not highlighted significantly in our brief, and it's this. One important timing issue is that Ms. Messacomer hired another employee in the same protected class shortly, MW, shortly before Ms. McKee was terminated, and then after the action plan, Ms. Messacomer, even though Ms. McKee had errors during that plan, she gave Ms. McKee another chance. This is my question to the court. If Ms. Messacomer's motivation was truly to terminate her for age discrimination, why didn't she do it at that time? Ms. McKee had other errors. The action plan said any other errors and you can be terminated, but she didn't do that. She wanted to give Ms. McKee another chance, and she did give Ms. McKee another chance. When she did give that extra chance, then there were additional errors, and that's why Ms. McKee was terminated. I see that I'm out of time. Thank you, Your Honors. Thank you, Ms. Brinkman. Mr. Rochelle, I think you have a little bit of rebuttal time. You'll have to unmute your microphone, Mr. Rochelle. Here, we're all having technology issues. Is that better? That's better. With all due respect, Your Honors, Ms. McKee's manager saw her as an old dog who couldn't learn new tricks. Every single error that's cited, every error cited by U.S. Bank has to do with this new swift computer system that was put in place in 2014. The idea is she couldn't catch on to the computer system. Fine. The fact is, and the record shows, that Ms. McKee was just as able as her coworkers to learn that system and process elections just as well as they could. She had some of the most complex events. Mr. Casewell testified to that. Yes, she made some errors, but so did everybody. Nobody else got terminated for making those errors, only Ms. McKee, and they were less severe. When you take away the fact that she actually could learn the system as well as her peers, all you're left with is age, and that's a differential treatment. Now, opposing counsel noted that there is no record evidence of Ms. McKee's performance prior to 2011. There is. That's the testimony of her own manager and Ms. McKee herself, who testified that the scores were the same. It's undisputed in this record. Certainly, given the summary judgment standard, the court can't assume that Ms. McKee was a terrible performer before 2011. I want to also talk about the Rideout case because counsel tries to distinguish that by saying that a by-election was meeting the illegitimate expectations of his employer. That's critical. The key piece of evidence that the Eighth Circuit held proved that Mr. Rideout was meeting those expectations was his 40-year history and his favorable performance review. It's the exact same evidence that we have here. Now, in that case, the employer tried to argue, just as U.S. Bank does, that, in fact, Mr. Rideout had become a terrible performer. They just didn't document that in his performance reviews. This court reversed summary judgment and said, well, a jury can disagree. Moreover, Your Honors, with respect to comparators, and in because he ignored seven warnings. He wasn't given a written warning or terminated. Ms. McKee caused a handful of inconsequential errors that didn't cause a dollar loss to the bank, and she was terminated. That's differential treatment. The jury might find it's because he hadn't been there as long as Ms. McKee, but they don't have to, as a matter of law, make that finding. I see that I'm out of time, Your Honors. Very well. Thank you, counsel. We have a number of technicalities today. The case will be submitted and decided in due course.